**Richard E. Weltman (rew@weltmosk.com)**
**Michael L. Moskowitz (mlm@weltmosk.com)**
**Debra Kramer (dk@weltmosk.com)**
**Michele K. Jaspan (mkj@weltmosk.com)**
**Adrienne Woods (aw@weltmosk.com)**
**Melissa A. Guseynov (mag@weltmosk.com)**
**WELTMAN & MOSKOWITZ, LLP**
*Proposed Attorneys for Debtor/Debtor-in-Possession*
270 Madison Avenue, Suite 1400
New York, New York 10016-0601
(212) 684-7800

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>HVI CAT CANYON, INC.,<br><br>Debtor. | Chapter 11 Case.<br><br>Case No. 19-12417 (MEW) |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 363 APPROVING USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION AND SETTING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

TO: THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE:

HVI Cat Canyon, Inc., debtor and debtor in possession ("Debtor"), submits this motion ("Motion") for entry of interim and final orders pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 approving the use of cash collateral over the anticipated objection of UBS, AG, London Branch ("Secured Lender"), providing adequate protection, and setting a final hearing pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure. In support of this Motion, Debtor respectfully represents:

# BACKGROUND

**A. General**

1. On July 25, 2019 ("Petition Date"), Debtor commenced with this Court a voluntary case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this Chapter 11 case.

2. Debtor is the owner and operator of producing oil and gas interests in California. Debtor owns an approximate 100% working interest and an average 85% net revenue interest in several oilfields in the Santa Maria Valley of Santa Barbara County, North Belridge in Kern County, and Richfield East Dome Unit in Orange County. Debtor's assets include: (a) fee and leased mineral acreage, (b) oil and gas wells, (c) compressor plants, (d) tank batteries, and (e) an extensive pipeline infrastructure. Debtor was formed as a Colorado corporation in 1997 and employs approximately 50 individuals.

3. Information regarding Debtor's business, capital structure, and the circumstances leading to the commencement of this Chapter 11 case is set forth in the Declaration of Alex G. Dimitrijevic Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, and in Support of the Debtor's Chapter 11 Petition and First-Day Relief ("Dimitrijevic Declaration"), which has been filed with the Petition (ECF doc. no. 1.)

4. Through this Chapter 11 case, Debtor intends to increase liquidity to, *inter alia*, satisfy the secured claim of Secured Lender in full, abandon certain other assets over time, and emerge as an operating entity with its remaining assets. Debtor requires the use of Secured

Lender's Cash Collateral, as that term is defined in section 363(a) in order to accomplish these goals.

**B. Pre-Petition Indebtedness and Capital Structure**

    **a. Secured Debt**

5. Debtor's liabilities include two secured tranches of debt. Debtor is a borrower under: (i) that certain First Lien Credit Agreement with Secured Lender dated as of May 20, 2016 in the amount of $50,000,000; and (ii) that certain Second Lien Credit Agreement with Secured Lender dated as of May 20, 2016, in the amount of $50,000,000 (together, the "Secured Debt"). Substantially all of Debtor's assets are pledged as collateral for its obligations under the Secured Debt. The current outstanding amount under the Secured Debt is approximately $114,000,000.

6. Debtor is also a borrower under that certain Amended and Restated Credit Agreement dated as of May 20, 2016 with GLR, LLC ("GLR"). GLR has acknowledged to Debtor its support to the use of its cash collateral. GLR is owed approximately $104,000,000.

7. Secured Lender and GLR are parties to that certain Subordination and Intercreditor Agreement ("Subordination Agreement") dated as of May 20, 2016. The Subordination Agreement provides, among other things, that GLR's liens, right to payment and right to exercise remedies are subordinate to those of Secured Lender.

    **b. Unsecured Debt**

8. As of the Petition Date, Debtors had approximately $26,000,000.00 in outstanding obligations to trade creditors and other vendors.

    **c. Equity**

9. Debtor is 100% owned by GOGH, LLC, which in turn is 100% owned by GIT, Inc.

### C. Debtor's Need for Cash Collateral

10. Without the immediate use of Secured Lender's cash collateral ("Cash Collateral"), Debtor will be unable to pay salaries (next payroll is due on August 2, 2019), utilities and other operating expenses incurred in the ordinary course of business and may be forced to cease operations and terminate approximately 50 employees. Thus, Debtor's ability to preserve and maximize the value of its assets for all creditors (secured and unsecured) will be critically impaired, and its ability to reorganize, will be substantially jeopardized absent authority to use Cash Collateral. Accordingly, Debtor seeks entry of an interim, and subsequently a final, order authorizing use of Cash Collateral pursuant to the budgets annexed to the Proposed Order (annexed hereto as Exhibit A) as **Exhibit 1** ("Cash Collateral Budgets")[1], subject to a variance equal to the greater of ten percent (10%) of the expenses set forth in the Cash Collateral Budget. To the extent amounts set forth in the Cash Collateral Budget are not used in a given period, they may be spent in any subsequent period(s). The 21-day Cash Collateral request is for approximately $1,500,000.00.

11. Through the use of Cash Collateral, Debtor will be able to maintain operations as a going concern while protecting, preserving and maximizing the value of its assets for all creditors including Secured Lender. Moreover, Secured Lender is oversecured and, as such, Secured Lender's interests will not be prejudiced by granting Debtor the right to use Secured Lender's Cash Collateral. Specifically, attached hereto as Exhibit B is a Reserve Report as of December 31, 2016 ("Reserve Report"). The 2016 year-end valuation of Debtor's assets provides a net present value

---

[1] The budgets attached are for the first 21-days and 13-weeks.

for Debtor's oil and gas reserves, subject to Secured Lender's lien, of $235 million ("2016 Valuation").

12. The 2016 Valuation is the present value of estimated future oil and gas revenues, net of estimated direct expenses and discounted at an annual discount rate of 10%.

13. Since the Reserve Report was prepared, the price per barrel has risen from approximately $55, to today's price of $57.28, an increase of approximately 4%, thus bringing the value of the reserve assets to upwards of $245 million or greater, well in excess of Secured Creditors' liens.

14. To further protect Secured Lender's interest in Debtor's assets, if necessary, Debtor proposes to grant Secured Lender replacement liens on all Debtor's post-petition assets solely to the extent of any diminution in the value of the prepetition collateral.[2]

**CONCISE STATEMENT OF RELIEF REQUESTED
PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)**[3]

15. By this Motion, Debtor respectfully requests that the Court enter an order pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001: (a) approving on an emergency basis an interim order substantially in the form submitted herewith, authorizing Debtor to use Cash Collateral and granting adequate protection to Secured Lender; (b) granting Secured Lender replacement liens pursuant to section 361 and 363(c) and (e), solely to the extent of any diminution in value of their prepetition collateral; (c) approving the manner of service of notice of this Motion; (d) scheduling a final hearing on this Motion no

---

[2] Debtor respectfully submits that the proposed replacement liens will adequately protect Secured Lender within the meaning of section 361 of the Bankruptcy Code and maintains that it should be authorized to use Cash Collateral in accordance with the Cash Collateral Budget.
[3] This Motion is intended to provide only a summary of the relief requested. To the extent there are inconsistencies with the proposed interim order submitted herewith, the terms of the proposed order govern.

earlier than 15 days after the service of the Motion pursuant to Bankruptcy Rule 4001(b); and (e) granting such other and further relief to Debtor as the Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

16. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Debtor requires the immediate use of Cash Collateral to fund its day-to-day operations in Chapter 11. Indeed, absent such relief, Debtor's operations will be brought to an immediate halt, with damaging consequences for Debtor, its estate and creditors. The interests of Secured Lender in the Cash Collateral will be protected by replacement liens in Debtor's assets to the extent of any diminution in the value of the collateral securing such liens and claims.

17. Significantly, secured creditor GLR has already acknowledged to Debtor its support for Debtor's use of its Cash Collateral. Here, Cash Collateral only gets created through Debtor's operations and oil production. Debtor's request for use of Cash Collateral is roughly 1% of Secured Lender's claim.

18. Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The principal purpose of adequate protection is to safeguard the secured creditor against diminution in value of its interests in property. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992). Although the term "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Code sets forth three (3) non-exclusive methods of how an interest in property

may be adequately protected. *Id.*; *In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983). The non-exclusive forms are: (a) lump-sum cash payments to the extent that use of property results in a diminution of an entity's interest in property; (b) provision of additional or replacement liens to the extent that use of property results in a diminution in value of an entity's interest in property; and (c) such other relief as will result in an entity realizing the indubitable equivalent of its interest in property. *See* 11 U.S.C. § 361.

19. As the foregoing list is neither exclusive nor exhaustive, there is a great deal of flexibility in terms of what may constitute adequate protection. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Ultimately, what constitutes adequate protection is determined on a case-by-case basis. *See In re 495 Central Park Avenue Corp.*, 136 B.R. at 631; *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (citing *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y.1986)); *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re O'Connor*, 808 F.2d at 1393.

20. Courts have held that when use of cash collateral facilitates preservation of a debtor's going concern value, the secured creditor is adequately protected by virtue of the preservation or enhancement of the debtor's assets. *See, e.g.*, *In re Constable Plaza Assoc., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (authorizing use of cash collateral to operate and maintain debtor's office building, thus protecting secured lender's collateral); *In re Atrium Dev. Co.*, 159 B.R. 464, 470 (Bankr. E.D. Va. 1993) ("Adequate protection is typically established by the fact that cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured

7

creditor's collateral during the bankruptcy case." *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *see also In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy.").

21. In this case, Debtor acknowledges that Secured Lender may be entitled to adequate protection against any diminution in the value of its prepetition collateral and is providing Secured Lender with replacement liens to the extent of any such diminution. In addition, Secured Lender is also adequately protected by Debtor's continued operation and the resulting preservation of the going concern value of Debtor's assets. *See*, *e.g.*, *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. M.D. Mass. 1988) (holding that steady stream of revenue over budget period, with new revenue replacing old, adequately protected secured lender's interest in its collateral). Debtor's use of its cash flow pursuant to the Cash Collateral Budget provides an additional layer of adequate protection to Secured Lender because the Cash Collateral Budget ensures that Debtor's use of that cash flow will be limited to those items that are essential to Debtor's operation.

22. Without use of Cash Collateral, Debtor will be unable to pay wages and utilities, purchase critical goods or pay other expenses necessary to operate on a day-to-day basis, and would be required to immediately liquidate. Liquidation of Debtor at this time would not be in the interest of any party in this case, including, particularly, Secured Lender. Use of Cash Collateral is, therefore, critical to prevent the abrupt discontinuation of Debtor's operations and liquidation of its assets.

23. Debtor respectfully submits that cause has been shown for entry of an interim order permitting Debtor to immediately use Cash Collateral and excuse compliance with the 14-day stay embodied in Bankruptcy Rule 6004(h), to the extent it is applicable here.

## NOTICE WITH RESPECT TO INTERIM ORDER

24. Debtor submits that, given its financial condition, the timing of its Chapter 11 petition, and its immediate need for authorization to use Cash Collateral, an expedited hearing as contemplated by Bankruptcy Rule 4001(b) is warranted. Notice of this Motion has been provided to (i) the U.S. Trustee (Attn: Serene Nakano, Esq.); (ii) the holders of the five (5) largest secured claims against Debtor; (iii) the holders of the twenty (20) largest unsecured claims against Debtor; (iv) counsel to Secured Lender; (v) secured lender GLR; (vi) the Internal Revenue Service; (vii) the Environmental Protection Agency and similar state environmental agencies for states in which Debtor conducts business; and (viii) the state attorneys general for states in which Debtor conducts business; and (ix) all parties who have timely filed requests for notice under Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Debtor submits that, in view of the facts and circumstances, such notice to the Notice Parties is sufficient and no other or further notice need be provided.

## NOTICE WITH RESPECT TO FINAL HEARING

25. Pursuant to Bankruptcy Rule 4001(b), Debtor respectfully requests that it be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than 15 days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with any interim order granting this Motion, on the Notice Parties. Debtor submits such notice constitutes sufficient notice of the final hearing pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Rule 2002.

26. No previous request for the relief requested herein has been sought in this or any other Court.

## CONCLUSION

WHEREFORE, Debtor respectfully requests entry of the Proposed Interim Order and Proposed Final Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
July 30, 2019

**WELTMAN & MOSKOWITZ, LLP**
*Proposed Attorneys for Debtor/Debtor in Possession*

By: */s/ Michael L. Moskowitz*
    **MICHAEL L. MOSKOWITZ**
270 Madison Avenue, Suite 1400
New York, New York 10016
(212) 684-7800