**Richard E. Weltman (rew@weltmosk.com)**
**Michael L. Moskowitz (mlm@weltmosk.com)**
**Debra Kramer (dk@weltmosk.com)**
**Adrienne Woods (aw@weltmosk.com)**
**Melissa A. Guseynov (mag@weltmosk.com)**
**WELTMAN & MOSKOWITZ, LLP**
*Proposed Attorneys for Debtor/Debtor-in-Possession*
270 Madison Avenue, Suite 1400
New York, New York 10016-0601
(212) 684-7800

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 Case |
| | ) |
| HVI CAT CANYON, INC., | ) Case No. 19-12417 (MEW) |
| | ) |
| Debtor. | ) |
| | ) |

**QUALIFIED JOINDER IN STATEMENT OF POSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF MOTION TO TRANSFER VENUE**

To:     THE HONORABLE MICHAEL E. WILES
        UNITED STATES BANKRUPTCY JUDGE

HVI Cat Canyon, Inc., debtor and debtor in possession ("Debtor")[1], submits this Qualified Joinder ("Joinder") in the Statement of Position of Official Committee of Unsecured Creditors in Support Of Motion To Transfer Venue at ECF No. 74 ("Statement").  In support of this Motion, Debtor respectfully represents:

**FACTUAL BACKGROUND**

**A.      Procedural Background**

1.      On July 25, 2019 ("Petition Date"), Debtor commenced with this Court, a voluntary case under chapter, title 11 of the United States Code ("Bankruptcy Code").  Debtor is authorized

---

[1] All capitalized terms unless otherwise defined, shall have the meaning ascribed to them in the Objection (ECF doc. no. 77).

to continue to operate its business and manage its properties as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On August 9, 2019, the United States Trustee filed a notice of the Appointment of Official Committee of Unsecured Creditors, announcing the following composition of the statutory committee of unsecured creditors ("Committee"):  (a) Brian Corson, in his individual capacity; (b) Escolle Tenants in Common; and (c) Pacific Petroleum California, Inc.  While Committee has not filed a motion to retain counsel as of the date of this Motion, prospective counsel has appeared through various pleadings including the Statement.  No trustee or examiner has been appointed in this Chapter 11 Case.

3.      Debtor is the owner and operator of producing oil and gas interests in California. Debtor owns an approximate 100% working interest and an average 85% net revenue interest in several oilfields in the Santa Maria Valley of Santa Barbara County, North Belridge in Kern County, and Richfield East Dome Unit in Orange County.  Debtor's assets include: (a) fee and leased mineral acreage, (b) oil and gas wells, (c) compressor plants, (d) tank batteries, and (e) an extensive pipeline infrastructure.  Debtor was formed as a Colorado corporation in 1997 and employs approximately 50 individuals.

4.      Information regarding Debtor's business, capital structure, and the circumstances leading to the commencement of this Chapter 11 Case is set forth in the Declaration of Alex G. Dimitrijevic pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York and in Support of the Debtor's Chapter 11 Petition and First-Day Relief ("Dimitrijevic Declaration"), which has been filed with the Court with the petition [ECF doc no. 1].

5.      Through this Chapter 11 Case, Debtor intends to increase liquidity to, *inter alia*, satisfy the secured claims of Secured Lenders in full, abandon certain other assets over time, and

emerge as an operating entity with its remaining assets. To fund this process, Debtor filed a Motion, seeking authority to surcharge Secured Lenders' collateral. Secured Lenders assert secured claims collateralized by, among other things, Debtor's interests in real property comprised of certain oil and gas leases.

6.      On August 14, 2019, various regulatory and taxing agencies[2] filed Motion to Transfer Venue at ECF No. 47 ("Venue Motion"). On August 23, 2019, the Committee filed its Statement at ECF No. 74. UBS filed its Memorandum of Law in Support at ECF No. 76 and Declaration of Samantha M. Indelicato in Support of Motion at ECF No. 82. One additional California agency, Department of Conservation, filed its Joinder at ECF No. 73.

**B.      Pre-Petition Indebtedness and Capital Structure**

7.      Debtor and Secured Lenders entered into certain loan arrangements evidenced by: (i) that certain First Lien Credit Agreement with Secured Lender UBS AG, London Branch, dated as of May 20, 2016 in the original principal amount of $50,000,000 (the "UBS Secured Debt"); and (ii) that certain Amended and Restated Credit Agreement, as amended, with Secured Lender GLR dated as of May 20, 2016 (the "GLR Secured Debt"). Substantially all of Debtor's assets are pledged as collateral for its obligations under the UBS Secured Debt and the GLR Secured Debt. Debtor acknowledges the current outstanding amount due to UBS is approximately $114,000,000, and the current outstanding amount due to GLR is approximately $104,000,000.

8.      Secured Lender UBS and Secured Lender GLR are parties to that certain Subordination and Intercreditor Agreement ("Subordination Agreement"), dated as of May 20,

---

[2]   The Agencies are the County of Santa Barbara, California, Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California, Santa Barbara Air Pollution Control District (collectively "the California Entities").

2016. The Subordination Agreement provides, among other things, that Secured Lender GLR's

right to payment and right to exercise remedies are subordinate to those of Secured Lender UBS.

9.      As of the Petition Date, Debtor had approximately $26,000,000 in outstanding

obligations to trade creditors and other unsecured vendors.

10.     Debtor is 100% owned by GOGH, LLC, which in turn is 100% owned by GIT, Inc.

11.     Debtor chose the Southern District of New York for its bankruptcy reorganization

because the headquarters for it and several other affiliates are located in New York City.  Further,

contrary to UBS's Memorandum, UBS previously agreed that HVI's headquarters and principal

place of business is New York City.

12.     The First Lien Credit Agreement with UBS, as well as all other agreements between

the loan parties, mandates that the venue of any action be in New York City.

> **Each party hereto** acknowledges and agrees that it has voluntarily chosen the laws
> of the State of New York as the governing law hereunder and under the other Loan
> Documents and **acknowledges, among other things, the following contacts with
> the State of New York in connection with the Transaction Documents**: **(i) HVI
> CC has its principal place of business in New York; (ii) HVI CC is a resident
> of the State of New York; (iii) a substantial part of the negotiations relating to
> the Transactions was conducted by people located at the offices of the Agents,
> the Lender and the Loan Parties, as the case may be, in New York;** and (iv) the
> GLR Facility Documents are and have been governed by the laws of the State of
> New York. (b) Submission to Jurisdiction. Each Borrower and **each other Loan
> Party irrevocably and unconditionally agrees that it will not commence any
> action, litigation or proceeding of any kind or description, whether in law or
> equity, whether in contract or in tort or otherwise, against the Administrative
> Agent, any Lender, or any Related Party of the foregoing in any way relating
> to this Agreement or any other Loan Document or the transactions relating
> hereto or thereto, in any forum other than the courts of the State of New York
> sitting in New York County and of the United States District Court of the
> Southern District of New York, and any appellate court from any thereof, and
> each of the parties hereto irrevocably and unconditionally submits to the
> jurisdiction of such courts and agrees that all claims in respect of any such
> action, litigation or proceeding may be heard and determined in such New
> York State court or, to the fullest extent permitted by applicable law, in such
> federal court.** Each of the parties hereto agrees that a final judgment in any such
> action, litigation or proceeding shall be conclusive and may be enforced in other

jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement or in any other Loan Document shall limit or prevent the Administrative Agent or any Lender from bringing any action or proceeding relating to this Agreement or any other Loan Document against any Borrower, any other Loan Party or its or their respective properties in the courts of any jurisdiction in which it may be necessary, desirable or convenient in order to enforce any rights or collect any amounts due under this Agreement or any other Loan Document, and the Administrative Agent and each Lender is hereby authorized to bring any such action or proceeding in any such jurisdiction.

(c) Venue. **Each Loan Party hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable Requirements of Law, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any other Loan Document in any court referred to in Section 9.09(b). Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable Requirements of Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.**

First Lien Credit Agreement, §9.09 (emphasis added).

13.     Further, during pre-petition negotiations with UBS, it requested or acquiesced that bankruptcy venue be in New York City, and that the parties seek a cooperative process.  UBS's Memorandum represents a complete departure from the Credit Agreement as well as the pre-petition discussions respecting Debtor's filing for relief with the United States Bankruptcy Court for the Southern District of New York.

## LIMITED JOINDER

### A.    Venue is Proper in the Southern District of New York

14.     The precise words of the First Lien Credit Agreement justify venue in the Southern District of New York.  Indeed, venue is proper in a debtor's principal place of business, or "nerve center" as defined by the Supreme Court:  A debtor's principal place of business is the place "where [the] corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010).  Despite myriad, conflicting arguments surrounding the Venue Motion, ample evidence

5

supports that New York City is the Debtor's principal place of business because it is the "nerve center" of the company, the place from which the company's decisions are actually controlled. *Id.* at 93–95, 130 S.Ct. 1181.

15.    First, all of Debtor's oil and gas accounting as well as its payroll, human resources, accounting and other functions occur in New York City. Hearing Transcript, August 1, 2019, pp. 24-30. As Debtor's "nerve center" where all "high-level decisions" are made, Debtor's principal place of business is New York City. More importantly, given the mandatory venue language in the First Lien Credit Agreement, resolution of both secured and unsecured claims, particularly if they involve suits under those agreements, venue is both proper and efficient in New York City. *See e.g. In re The Crosby Nat'l Golf Club*, 534 B.R. 888, (N.D.Tex. 2015).[3]

16.    Further, Debtor's choice of venue deserves substantial deference. Transfer of venue of a bankruptcy case should not be undertaken lightly. *In re Alcorn Corp.*, 2012 WL 2974889, at *3 (Bankr.E.D.Pa. July 20, 2012); *In re Condor Exploration, LLC*, 294 B.R. 370, 377 (Bankr.D. Colo.2003); *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr.S.D.N.Y.2002). Thus, where venue is proper, Debtor's choice of venue should be given great weight. *In re Alcorn Corp.*, 2012 WL 2974889, at *3, citing *In re Onco Invest. Co.,* 320 B.R. 577, 579 (Bankr. D. Del 2005) ("A plaintiff's choice of venue should only be disturbed when the balance weighs heavily in favor of the defendant's motion for transfer."); *In re Pavilion Place Associates*, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988); *In re Butcher*, 46 B.R. 109, 112 (Bankr. N.D. Ga.1985); *In re Pubco Corp.*, 27 B.R. 139, 141 (Bankr. E.D. Pa. 1983); see also *In re Uslar*, 131 B.R. 22, 23 (Bankr. E.D.Pa. 1991) (requiring great weight of factors to overcome the debtor's choice of venue), and *In re Holiday*

---

[3]    At a minimum, UBS's Memorandum must be found to be a breach of the venue provisions of the First Lien Credit Agreement such that UBS may not cite to it in any subsequent legal proceeding.

*Towers, Inc.*, 18 B.R. 183, 187 (Bankr. S.D. Ohio.1982)(the evidence must demonstrate clear and proper justification).

### B.      Venue is Proper in the Northern District of Texas

17.      Debtor submits that venue may also be proper in the Northern District of Texas for the reasons stated by the Committee. Debtor denies the motives ascribed to it by UBS in its Memorandum for not filing the petition in the Northern District of Texas.  Debtor believes the Northern District of Texas's familiarity with the oil and gas industry, as well as the history between these parties would, if the Court is so inclined to transfer venue, serve all constituents well as demonstrated by both the Committee and UBS – the vast majority of the Debtor's creditors -- favoring that forum.

18.      As demonstrated by the recitations authored by UBS itself within the Credit Agreement, however, venue in the Southern District of New York remains a proper venue. However, Debtor believes that resolving the venue issue efficiently outweighs the cost of litigating the issue.  To that end, Debtor favors venue in the Northern District of Texas over the Central District of California given the preference of the vast majority of its constituents, provided that UBS is estopped from invoking the First Lien Credit Agreement's venue provisions henceforward.

### B.      Transfer Should Occur Immediately with a Bridge Order to Allow Use of Cash Collateral

19.      Finally, Debtor disagrees with UBS this Court should render a final ruling on the Cash Collateral Motion [ECF No.11].  Here, it is UBS that seeks to jam the Debtor and its estates by simultaneously forcing a scramble to transfer venue with all of its attendant consequences while also preparing for the most crucial issue in the case – cash collateral, surcharge and equities of the case relief.  To date, Debtor provided detailed expenditure data to UBS for its approval for which there has been no dispute from UBS.  As this Court noted, the expenses in the Cash Collateral

7

Budget consist only of reasonable expenses for which UBS could be surcharged to preserve its own collateral and to avoid waste or environmental liabilities.  Hearing Transcript, August 1, 2019, p.132: 1-3 ("It's for your own adequate protection. It's for the protection of your collateral and I can and, if you make me, I will authorize it under 506(c)").  Allowing Judge Hale to set the tone for the case under his charge provides the appropriate balance in the event of a transfer to his court.

**WHEREFORE,** Debtor respectfully requests that, if venue is to be transferred, that venue be transferred to the Northern District of Texas, that the Court enter a bridge order continuing the Interim Cash Collateral Order at ECF No. 43 to allow Judge Hale to weigh in on important case guideposts, and Debtor have such other and further relief as is just and proper in the circumstances.

Dated:    New York, New York
          August 26, 2019

                                    **WELTMAN & MOSKOWITZ, LLP**
                                    *Proposed Attorneys for Debtor/Debtor in Possession*

                                    By: */s/ Michael L. Moskowitz*
                                    **MICHAEL L. MOSKOWITZ**
                                    270 Madison Avenue, Suite 1400
                                    New York, New York 10016
                                    (212) 684-7800

8